UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALAN AMRON,

                Plaintiff,

    - against -

3M COMPANY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-8959 (PKC) (JMW)

PAMELA K. CHEN, United States District Judge:

On November 20, 2023, Plaintiff Alan Amron ("Plaintiff"), proceeding *pro se*, filed this action against Defendant 3M Company ("Defendant"). (Compl., Dkt. 1.) In his Amended Complaint, Plaintiff seeks rescission of a settlement agreement between the parties, claiming it is unconscionable and illusory and alleging breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and unjust enrichment. (Am. Compl., Dkt. 28.) Before the Court is Defendant's motion to dismiss all claims in this action pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Def.'s Mot. to Dismiss, Dkt. 32.) For the reasons stated herein, the Court grants Defendant's motion in its entirety.

## BACKGROUND[1]

### I. The 1997 Action and 1998 Settlement

The disputes between Plaintiff and Defendant began in 1997. Plaintiff, proceeding *pro se*, filed a complaint in this District alleging a "trade secret violation" by Defendant concerning his

---

[1] For the purpose of deciding Defendant's motion, the Court accepts all non-conclusory factual allegations in the Amended Complaint as true and draws all reasonable inferences in Plaintiff's favor. *See Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).

"Press-on memo pads," a "sticky note" product (the "1997 Action"). (*See* Am. Compl., Dkt. 28, at ECF[2] 8, 12, 16); *Amron v. 3M Minn. Mining & Mfg. Co.*, No. 97-CV-7281 (TCP) (MLO) (E.D.N.Y. Jan. 26, 1998) ("*Amron I*"). Within weeks, Plaintiff and Defendant settled. (*Id.* at ECF 16, 26; Am. Compl. Ex. A (the "Settlement"), Dkt. 28, at ECF 33–35.)[3] The Settlement provided that Plaintiff would receive $12,000, which Plaintiff understood as covering his legal expenses. (Am. Compl., Dkt. 28, at ECF 16, 24.) Plaintiff does not dispute that he was paid.[4]

According to Plaintiff, he "felt pressured" to sign the Settlement given his *pro se* status and Defendant's representation by a New York law firm. (*Id.* at ECF 2–3.) Plaintiff also claims that he was given one day to sign Defendant's proposed settlement, and that Defendant's counsel at the time "assured [Plaintiff] . . . that the proposed settlement was drafted with fairness in mind and designed to allow" Plaintiff to "make or have made" his version of a sticky note product. (*Id.* at ECF 2–3, 16.) The Settlement provides, in relevant part:

> 3. . . . [Plaintiff] . . . hereby release[s] and forever discharge[s] [Defendant] . . . from any and all claims, demands, obligations, debts, damages, agreements, promises, or causes of action of every nature, kind and description whatsoever, in law or in equity, whether known or unknown, and whether suspected or unsuspected that [Plaintiff] ever had, now has, or hereafter can, shall or may have against [Defendant] arising out of, directly or indirectly, or related in any way to the subject matter of the Action.
> . . .
> 6. [Defendant] acknowledges that it has no right to prevent [Plaintiff] from manufacturing and selling [Plaintiff's] Press-on memo pads, as Originally Conceived . . . in 1974. However, [Defendant] reserves the right to request, and

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

[4] In fact, Plaintiff provides evidence of the payment. (Am. Compl. Ex. A, Dkt. 28, at ECF 36–37.)

> [Plaintiff] agrees to provide proof by clear and convincing evidence that memo pads manufactured by or for [Plaintiff] after the dismissal of the Action are the same as the Press-on memo pads, as Originally Conceived . . . in 1974, if any questions arise in the future.
>
> 7. All agreements, covenants, obligations, representations and warranties, express or implied, oral or written between [Defendant] and [Plaintiff] concerning the subject matter hereof are contained herein. No other agreements, covenants, obligations, representations or warranties, express or implied, oral or written have been made by either party hereto to any other party concerning the subject matter contained in this Agreement and in the Action. All prior and contemporaneous conversations, negotiations, possible and alleged agreements, representations, covenants and warranties concerning the subject matter contained in this Agreement are merged herein. This is an integrated Agreement.
>
> 8. [Plaintiff] represents and states that in signing this Agreement he understands the terms of this Agreement, . . . and that he has not been influenced . . . in entering into this Agreement by any representation or statements obligations, not expressly contained in this Agreement, *and that he has relied on independently selected counsel*.
>
> 9. [Plaintiff] represents . . . that he . . . shall continue to treat the terms of this Agreement as confidential and shall not disclose either directly or indirectly, to third parties, make any public announcement with respect to this Agreement or any of the provisions hereof or the operations of the parties under them unless the written consent of [Defendant] is first obtained for each such disclosure or announcement.

(Settlement, Dkt. 28, at ECF 33–35.) (emphasis added).

Given the settlement, on January 26, 1998, the district court dismissed Plaintiff's claims with prejudice pursuant to Federal Rule of Civil Procedure 41(a). (Am. Compl., Dkt. 28, at ECF 38); Notice of Dismissal, *Amron I*, Dkt. 6.

## II. Post-Settlement Communications

On March 21, 1998, Plaintiff contacted a representative of Defendant informing them that he was "in serious negotiations with a major stationery industry manufacturer" to license his sticky note product, but that the "stumbling block" was that the manufacturer's lawyers needed to see the Settlement. (Am. Compl. Ex. D, Dkt. 28, at ECF 45.) Pursuant to the Settlement's terms, Plaintiff sought Defendant's "written consent to disclose [the parties'] full settlement agreement." (*Id.*)

3

Defendant responded by letter dated April 6, 1998, rejecting the request and stating that it was "puzzled" as to why the manufacturer needed to see the Settlement, since the agreement had not "provide[d] any rights from [Defendant] to [Plaintiff] under any intellectual property rights of [Defendant]." (Am. Compl. Ex. E, Dkt. 28, at ECF 46.) Defendant's letter also stated that Defendant "acknowledged that it has no right to prevent [Plaintiff] from manufacturing and selling the [press-on memo] pads as originally conceived . . . in 1974[,]" and though Defendant did not "have the details of those [press-on memo] pads[,]" it "ha[d] the right to receive that information should it be required." (*Id.*) Finally, Defendant's response further stated that it had "entered into the [Settlement] on the basis that the agreement . . . would be kept confidential" and that it saw "no reason to change that commitment from either side." (*Id.* at ECF 47.)

Plaintiff wrote a letter the same day, April 6, 1998, in response. (Am. Compl. Ex. F, Dkt. 28, at ECF 48.) Plaintiff assured Defendant that he had not, and would not, breach his obligations under the Settlement, but that he had been told by Defendant's counsel at the time of the signing "'that if [Plaintiff] ever needed to disclose any portion of [the parties'] agreement[,'] for whatever reason, '[Defendant's approval] would not be unreasonably withheld.'" (*Id.*) Plaintiff concluded stating he "underst[ood] [Defendant's] position as stated." (*Id.*)

### III. The 2016 Action

In January 2016, Plaintiff brought a new action against, *inter alia*, Defendant (the "2016 Action"). *Amron v. 3M Minn. Mining & Mfg. Co. et al.*, No. 16-CV-80125 (JIC) (BSS) (S.D. Fla. Sep. 8, 2016) ("*Amron II*"). Plaintiff alleged that Defendant's statements that it invented "sticky note" products gave rise to a continuing tort, defamation, fraudulent misrepresentation, unclean hands, negligence, and inequitable conduct. *See* Second Am. Compl. ("SAC") at 2–3, *Amron II*, Dkt. 37. Plaintiff sought declaratory judgment "on his constitutional inventorship title right" as

4

"the original creator and true inventor" of "sticky note" products as well as compensatory and punitive damages. *Id.* at 37–38, 59–61.

Defendants successfully moved to dismiss the case. *See* Order Granting Mot. to Dismiss ("Dismissal Order"), *Amron II*, Dkt. 79. The court found that the Settlement was "broad enough" and "unambiguously cover[ed] all of Plaintiff's . . . claims." *Id.* at 5–6. The court held that *res judicata* barred Plaintiff's claims, and that Plaintiff could not avoid the binding effect of the Settlement's terms by arguing fraudulent inducement since, "as a matter of law," Plaintiff could not "have reasonably relied on any representations or statements not contained in the Settlement." *Id.* at 8–10. Plaintiff's claims were dismissed with prejudice on September 8, 2016. *Id.* at 10.

## IV. Instant Action

Plaintiff brings this action to challenge the enforceability of the Settlement, but claims that he does not seek to relitigate "the patent infringement subject matter of the 1997 [and] 2016 actions."[5] (Am. Compl., Dkt. 28, at ECF 1–2.) Plaintiff now describes the Settlement as "unfair," "contradictory[,] self-restricting[,] and excessively broad." (*Id.* at ECF 3–4.) Plaintiff states that the Settlement "effectively preclude[s] [him] from realizing the benefits customarily afforded to an inventor," making his contractual benefits "illusory." (*Id.* at ECF 4.)

---

[5] Plaintiff's claims have shifted throughout the litigation. Plaintiff filed the original Complaint in this action on November 20, 2023. (Compl., Dkt. 1.) Originally, and perhaps surprisingly, Plaintiff first claimed that in 1998, "Plaintiff and 3M entered into a valid and enforceable settlement agreement" that "was supported by adequate consideration," and that 3M breached the agreement. (Compl., Dkt. 1, ¶¶ 40–43.) Plaintiff then filed the Amended Complaint on June 4, 2024, (Am. Compl., Dkt 28), shortly before and in anticipation of briefing on Defendant's motion to dismiss, (*see* 04/03/2024 Min. Entry; Pl.'s Letter, Dkt. 27). Plaintiff's updated theories seemingly arose out of the filings in this case, specifically that Plaintiff was "shocked to learn that the [Settlement] only binds [Plaintiff] to confidentiality and other extremely unfair and overly broad restrictions." (Pl.'s Letter, Dkt. 19, at 1.)

5

Plaintiff does not allege any new facts, i.e., after the 2016 Action, that are material to this lawsuit against Defendant.[6] Instead, Plaintiff claims that the present action is prompted by Plaintiff "consulting with a contract attorney" and "fully realiz[ing]," in the months preceding his Amended Complaint, that the Settlement "was illusory." (*Id.* at ECF 5–6, 13.) Plaintiff further claims that this realization "was not immediately apparent . . . until January of 2024," and that Defendant engaged in "a continuous fraudulent practice" through its "ongoing enforcement of the [Settlement's] terms." (*Id.*) Plaintiff takes particular issue with the Settlement's ninth clause concerning confidentiality, claiming that he had believed the parties had mutual confidentiality obligations until learning otherwise in 2024. (*Id.* at ECF 6.) Now, he further claims that the sixth clause's proof requirements, as well as "unreasonable demands for proof and approval," render his "[p]roduction rights . . . unenforceable." (*Id.* at ECF 8.) Finally, Plaintiff also complains that the third clause's release was "overly broad and oppressive." (*Id.* at ECF 8–10.) As Plaintiff sees it, Defendant has engaged in a "pattern of bad faith behavior" that has included "manipulation" and "shifting interpretations," and that Defendant "never intended to . . . honor[]" the Settlement's grant of rights. (*Id.* at ECF 4–5, 10–13.)

As injuries, Plaintiff claims that the Settlement has led him to lose potential revenue from the 1998 negotiations, unspecified "licensing prospects," and other developments of his product. (*See id.* at ECF 5, 11.) He also claims that the Settlement and Defendant's enforcement of the terms caused him "devastating reputational . . . harm." (*Id.* at ECF 5.) Further, Plaintiff broadly asserts "potential antitrust and unfair competition concerns." (*Id.*) For relief, Plaintiff primarily

---

[6] Plaintiff attaches to his Amended Complaint an affidavit from a person who sent Plaintiff a message in 2016 alleging to have worked for Defendant when Plaintiff brought samples of the product Plaintiff allegedly developed before the 1997 lawsuit. (Am. Compl. Ex. B, Dkt. 28, at ECF 42–43.) The Court does not find this evidence to be material to its decision.

6

requests a declaration that the Settlement is void, compensatory damages for his financial losses and Defendant's profits, and punitive damages for Defendant's alleged wrongful conduct. (*Id.* at ECF 28–30.)

Plaintiff presents four enumerated causes of action in his Amended Complaint. First, Plaintiff seeks recission of the Settlement on the basis that it is "unconscionable and illusory" given the alleged disparity in legal representation, the time constraints to sign the agreement, the communications between Plaintiff and Defendant, and the terms of the Settlement. (*Id.* at ECF 17–18.) Second, Plaintiff alleges that Defendant breached the implied covenant of good faith and fair dealing through "deceptive conduct" that was "designed to undermine Plaintiff's ability to exercise rights that the [Settlement] seemingly granted." (*Id.* at ECF 19.) Third, Plaintiff asserts a claim of fraudulent inducement with respect to the Settlement based on Defendant's alleged intentionally "false representations regarding fairness, production rights, and confidentiality" that ultimately "induc[ed]" and "compelled" Plaintiff to sign the Settlement. (*Id.* at ECF 20.) Fourth, Plaintiff brings a claim for unjust enrichment based on Defendant obtaining financial benefits in part because of "actions that hindered and prevented Plaintiff from realizing similar benefits." (*Id.* at ECF 20–21.)

## LEGAL STANDARD

Defendant seeks to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mem. Supp. Mot. Dismiss, Dkt. 32-1, at 1.) To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing a complaint's sufficiency, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote*, 9 F.4th at 106–07 (citing *Palin*, 940

F.3d at 809)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although courts assume that factual allegations contained in the complaint are true, this solicitude "does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678)).

Where a plaintiff proceeds *pro se*, the plaintiff's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). A *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## DISCUSSION

### I. Plaintiff's Claims are Precluded by Previous Court Decisions

#### A. Legal Standard

"The preclusive effect of a judgment rendered by a federal court sitting in diversity . . . is determined by the law of the state in which the rendering court sat." *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 371 (2d Cir. 2023) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). The court in the 2016 Action, which Plaintiff brought in Florida, had diversity jurisdiction. *See* Dismissal Order at 8 n.6, *Amron II*, Dkt. 79. Accordingly, Florida law governs whether the 2016 Action precludes this Court from considering Plaintiff's claims.

Under Florida law, *res judicata* applies when a ruling is "*on the merits*" and "four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Topps v. State*, 865 So.2d 1253, 1255 (Fla. 2004) (citations omitted); *see Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074 (11th Cir. 2013) (citations omitted). The court's decision must include a "citation to authority or other statement that clearly shows that the issue was considered by the court on the merits and relief was denied." *Topps*, 865 So.2d at 1258. "An order finally dismissing a complaint for failure to state a cause of action is an adjudication on the merits." *Foley v. Orange Cnty.*, No. 22-CV-13864, 2024 WL 49134, at *2 (11th Cir. Jan. 4, 2024) (quoting *Smith v. St. Vil*, 714 So.2d 603, 605 (Fla. Dist. Ct. App. 1998)).

When *res judicata* applies, it "bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised." *Topps*, 865 So.2d at 1255 (citation omitted). A related concept, collateral estoppel, similarly "bars relitigation of the same issues between the same parties in connection with a different cause of action." *Id.* at 1255 (citing *Clean Water, Inc. v. State Dep't of Env't Regul.*, 402 So.2d 456, 458 (Fla. Dist. Ct. App. 1981)); *see also Heney v. Windsor Corp.*, 777 F. Supp. 1575, 1578 (M.D. Fla. 1991) (collecting cases precluding consideration where the same evidence supports different legal theories in later cases).

B. **Application**

Although the 2016 Action largely concerned who the original creator of the first sticky note product was, the court had the opportunity then to decide, and did decide, whether the Settlement was "fraudulently induced." *See* Dismissal Order at 9–10, *Amron II*, Dkt. 79. For the reasons discussed herein, the Court finds that, under Florida law, Plaintiff's claims are precluded by the decision in the 2016 Action.

### 1. Identity of the Parties and the Quality of the Persons For or Against Whom the Claim is Made

As a starting point, there can be no dispute that the identity and the quality of the parties for and against whom the claims are made are the same here as in the 2016 Action: Plaintiff Amron, proceeding *pro se* and in his individual capacity, is suing Defendant, as he did nearly ten years ago.

### 2. Identity of the Thing Sued For

The "thing [Plaintiff] sued for" here was also litigated in the 2016 Action: whether the Settlement is binding on the parties and whether Plaintiff is entitled to monetary compensation for his alleged inability to pursue a sticky note product and for Defendant's allegedly unlawful conduct. *See Heney*, 777 F. Supp. at 1577 (reviewing the "[i]dentity of [t]hing [s]ued [f]or" by looking to whether "Plaintiff[] sought the same relief" as in the previous action) (citing *Valdes v. Ruas*, 354 So.2d 1269 (Fla. Dist. Ct. App. 1978)).

Here, Plaintiff seeks a declaration that the Settlement is not enforceable on the parties, as well as compensatory and punitive damages to remedy the ways Defendant unfairly hindered his ability to pursue his alleged inventions. (Am. Compl., Dkt. 28, at ECF 28–29). Both this declaratory relief and these damages were addressed in the 2016 Action. With respect to the latter, Plaintiff then sought similar compensatory and punitive damages. *See* SAC at 60–61, *Amron II*, Dkt. 37. With respect to the former, Plaintiff did not make an explicit request in his complaint. Instead, as the court in the 2016 Action understood it, Plaintiff made an argument "in passing" seeking to "[a]void the Settlement" and its binding effects in his opposition to Defendant's motion to dismiss. *See* Dismissal Order at 9, *Amron II*, Dkt. 79.

This distinction in how the issue was presented does not preclude a finding that "the thing sued for" is the same. "The idea underlying res judicata is that if a matter has already been decided,

10

the petitioner has already had [their] day in court, and . . . that matter generally will not be reexamined again in *any court* (except, of course, for appeals by right)." *Topps*, 865 So.2d at 1255.

Critically, the Court adheres to the Florida court's determination in the 2016 Action that it was *Plaintiff* who decided to raise this issue only in his opposition to Defendant's motion, rather than in his complaint. *See* Dismissal Order at 9, *Amron II*, Dkt. 79. Second, to the extent procedural constraints may have precluded Plaintiff from further developing his unenforceability argument during the motions practice (relative to how much liberty he would have been afforded with a complaint), Plaintiff could have sought exemptions to the constraints (which Plaintiff did seek and receive, *see* Order, *Amron II*, Dkt. 55 (granting Plaintiff additional time)); Order, *Amron II*, Dkt. 58 (granting Plaintiff additional pages), as well as an appeal (which Plaintiff did not seek).

Accordingly, Plaintiff is suing for what was already adjudicated in the 2016 Action.

3. Identity of the Causes of Action

As mentioned, *res judicata* covers both causes of action raised as well as causes of action "that could have been raised." *Topps*, 865 So.2d at 1255. The question is not just whether the causes of action share the same name; courts look instead to "the *identity of the facts essential* to the maintenance of the actions." *Gordon v. Gordon*, 59 So.2d 40, 44 (Fla. 1952); *see Lozman*, 713 F.3d at 1074–75 ("Identity of the cause of action is a question of 'whether the facts or evidence necessary to maintain the suit are the same in both actions.'" (quoting *Tyson v. Viacom, Inc.*, 890 So.2d 1205, 1209 (Fla. Dist. Ct. App. 2005) (en banc and per curiam)); *Desisto v. City of Delray Beach*, No. 14-CV-80378, 2014 WL 11444095, at *7 (S.D. Fla. Sep. 10, 2014) ("[T]he existence of multiple theories of liability does not give rise to multiple causes of action." (citation omitted)), *aff'd*, 618 F. App'x 558 (11th Cir. 2015). Courts look to whether "one episode or transaction" gives rise to the causes of action. *Desisto*, 2014 WL 11444095, at *7 (citing *Signo v. Fla. Farm Bureau Cas. Ins. Co.*, 454 So.2d 3, 5 (Fla. Dist. Ct. App. 1984)).

11

Plaintiff's causes of action here are all based on Plaintiff's allegations that Defendant acted in bad faith in presenting misleading information before and after the Settlement's signing and in Defendant's enforcement of the Settlement. (*See* Am. Compl., Dkt. 28, at ECF 17–21.) Plaintiff argues that "the time a plaintiff should reasonably have known of its claim is a question of fact for the jury." (Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n"), Dkt. 32-5, at 12 (collecting cases[7]).)

As a starting point, to the extent Plaintiff claims he created a "sticky note" product first, the Court finds these allegations to replicate what was addressed in the 2016 Action. *See* Dismissal Order at 7, *Amron II*, Dkt. 79 ("[T]his lawsuit . . . concerns Plaintiff's allegation that he invented the sticky note."). Further, Plaintiff's instant claims that Defendant's bad faith representations induced him to sign the Settlement are indistinguishable from Plaintiff's allegations of "lies and deceit" in the 2016 Action when arguing for the Settlement to be declared unenforceable. *See* Pl.'s Opp'n at 8, *Amron II*, Dkt. 59. The court in the 2016 Action unambiguously rejected these claims, holding that "[a]s a matter of law, . . . Plaintiff [could not] have reasonably relied on any representations or statements not contained in the Settlement." Dismissal Order at 9, *Amron II*, Dkt. 79.

This leaves only Plaintiff's instant claims that Defendant has acted in bad faith in enforcing the contract since the Settlement. The only enforcement action alleged by Plaintiff now occurred in 1998, when Defendant denied Plaintiff an exception to the confidentiality guarantee set forth in the Settlement's ninth clause.[8] (*See* Am. Compl. Ex. E, Dkt. 28, at ECF 46–47.) But Plaintiff's

---

[7] Plaintiff collects cases from this Circuit and Minnesota state courts. Though these cases may be informative, neither party has made arguments in this matter on the basis of Florida law which, as discussed *supra*, applies here.

[8] Plaintiff can be understood to complain of enforcement under the sixth clause's provision that Defendant may be entitled to gather evidence that any sticky notes products Plaintiff produces are the same as Plaintiff's original Press-on memo pads. (*See* Am. Compl., Dkt. 28, at

12

challenge to Defendant's enforcement of that provision is based on Defendant's alleged representations preceding the Settlement that confidentiality exceptions "would not be unreasonably withheld." (*See* Am. Compl. Ex. F, Dkt. 28, at ECF 48.)  As stated, the court in the 2016 Action already found that Plaintiff was not entitled to rely on any such pre-agreement communications or promises not contained in the Settlement.

Nonetheless, Plaintiff argues that his claims based on this alleged misunderstanding of the contract are not barred by the 2016 Action because Defendant's conduct constituted "deceptive conduct" and a failure "to disclose material information regarding the true nature of the confidentiality clause" that "actively prevented Plaintiff from discovering the true nature and extent of his injuries." (Pl.'s Opp'n, Dkt. 32-5, at 12.)  According to Plaintiff, this misdirection did not cease until he recently "consult[ed] with a contract attorney," who enabled Plaintiff to "fully realize[]" what the confidentiality terms in the Settlement mean and that the Settlement was "illusory." (Am. Compl., Dkt. 28, at ECF 5–6, 13; Pl.'s Opp'n, Dkt. 32-5, at 12, 14.)

There is no merit to this argument.  First, Plaintiff fails to allege any facts to support his claim that Defendant engaged in any deceptive or fraudulent conduct either before or after the execution of the Settlement that concealed the "true nature of the confidentiality clause." (Pl.'s Opp'n, Dkt. 32-5, at 12; Am. Compl., Dkt. 28, at ECF 22, 26.)  Again, as discussed *infra*, to the extent Plaintiff claims that before the Settlement was signed, Defendant misled Plaintiff into believing that exceptions to the confidentiality clause would not be "unreasonably withheld," that claim was rejected by the court in the 2016 Action, which precludes Plaintiff from resurrecting that claim here.  Dismissal Order at 9, *Amron II*, Dkt. 79.  Second, if Plaintiff is instead relying on

---

ECF 5, 8, 12; Settlement, Dkt. 28, at ECF 34.)  But Plaintiff points to no instance when this clause was enforced and does not connect it to any lost opportunity.

13

his April 1998 communications with Defendant regarding the confidentiality clause, these allegations do not demonstrate any deception or fraud by Defendant; rather, those communications merely reiterate the language in the confidentiality clause, which Plaintiff stated at the time he understood and intended to abide by.  (*See* Am. Compl. Ex. D, Dkt. 28, at ECF 45; Am. Compl. Ex. F, Dkt. 28, at ECF 48.)  Under the plain terms of the confidentiality clause, Defendant was not required to grant the exception, and Defendant's decision not to do so in 1998—months after the Settlement was executed—does not constitute fraud.  Finally, Plaintiff's claim that Defendant's misdirection continues to this day is wholly conclusory and not supported by any factual allegations.  In sum, there are no facts alleged in the Amended Complaint that support Plaintiff's claim that Defendant engaged in any fraud or deception that prevented Plaintiff from discovering the "illusory" nature of the confidentiality clause until 2024.

The Court also finds wholly implausible and unsupported by the factual allegations in the Amended Complaint Plaintiff's claim that he only "realized" in 2024, "after consulting with a contract attorney," that the confidentiality clause was allegedly "illusory," i.e., that it was one-sided and applied only to him, and that he had been defrauded.  (Am. Compl., Dkt. 28, at ECF 5–6, 13; Pl.'s Opp'n, Dkt. 32-5, at 12, 14.)  Even assuming, for the sake of argument, that the Settlement's confidentiality clause requires legal expertise to be understood, the Settlement states in plain and unambiguous terms that at the time Plaintiff entered into the Settlement, he "ha[d] relied on independently selected counsel." (Settlement, Dkt. 28, at ECF 34.)[9]  Additionally, during

---

[9] Even if the Court were to assume Plaintiff signed the Settlement knowing that it incorrectly described Plaintiff's representation status, the Court struggles to see how Plaintiff was coerced into agreeing to that description.  Though the prospect of *pro se* litigation against Defendant might have been intimidating, it was Plaintiff who initiated the litigation in 1997 as a *pro se* litigant.  Accordingly, Defendant cannot be said to have acted in bad faith by participating and defending itself in the litigation that Plaintiff began.

the 2016 Action, Plaintiff's then-operative complaint pointed to Defendant's discussions of the Settlement with the "media worldwide," including "AP, CNN, Forbes Magazine, Wall Street Journal, Twin Cities Pioneer Press, Star Tribune, Biz Journal and Business Insider," which were also "picked up by literally thousands of media outlets around the world." SAC at 34–37, *Amron II*, Dkt. 37 (reproducing Defendant's statement to the press that "[t]here was nothing in the [Settlement] that limited what 3M could say"). To the extent Plaintiff was deceived through Defendant's enforcement and statements about the whether confidentiality clause applied unilaterally, that deception was over by the time Plaintiff litigated the 2016 Action. Accordingly, the Court finds that Defendant's allegedly misleading statements regarding the nature of the confidentiality clause were part of the same facts that supported the fraudulent inducement arguments addressed in the 2016 Action.

Thus, the Court finds Plaintiff's causes of action could have been raised, or are otherwise identical, to the causes of action in the 2016 Action.

### 4.     Whether the Decision was Made on the Merits

The Court finds it beyond dispute that the 2016 Action fully resolved the question of whether the Settlement was binding in light of Plaintiff's allegations of fraudulent conduct by Defendant. The decision in the 2016 Action examined this argument and the factual allegations Plaintiff cited in support, cited cases for the standard to be applied, and drew from cases examining facts similar to the ones with which it was dealing. Dismissal Order at 9, *Amron II*, Dkt. 79. This "clearly shows that the issue was considered by the court on the merits and relief was denied" as required for *res judicata*. *See Topps*, 865 So.2d at 1258.

Accordingly, the Court finds that *res judicata* applies, and Plaintiff's claims are dismissed.

15

## II. The Court Does Not Grant Leave to Amend

"Although Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted). Ordinarily, a plaintiff's *pro se* status weighs in favor of granting leave to file an amended complaint. *Mitchell v. New York*, No. 23-705, 2024 WL 319106, at *2 (2d Cir. Jan. 29, 2024) (summary order) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)). "But leave to amend may be denied if it would be futile." *Id.* (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)); *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1115 (2d Cir. 2024); *see also McKie v. Kornegay*, No. 21-CV-1943, 2022 WL 4241355, at *3 (2d Cir. Sep. 15, 2022) ("[A]mendment should be denied where the complaint gives no 'indication that a valid claim might be stated.'" (quoting *Cuoco*, 222 F.3d at 112)).

The Court denies Plaintiff leave to file a Second Amended Complaint as futile. As discussed, Plaintiff asserted the same claims of fraud in the inducement and enforcement of the Settlement in the 2016 Action and, despite a clear ruling in that case rejecting those claims, attempted to resurrect them here, along with a claim of unjust enrichment, based on the same facts. The claims raised in the 2016 Action and here are all based on Plaintiff's belief that he was deceived and defrauded into signing the Settlement and agreeing to be bound by the confidentiality clause contained therein. While Plaintiff understandably might regret that decision, he cannot undo it by litigating and re-litigating his claims of fraud and deception against Defendant over and over again.

16

## CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is granted, and the Amended Complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted. The Court also denies, as futile, leave for Plaintiff to file a Second Amended Complaint. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 29, 2025
       Brooklyn, New York